Rel: January 24, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0730

_____

### H.K.

### v.

### D.D.

### Appeal from Coffee Juvenile Court
### (JU-23-103.02)

FRIDY, Judge.

H.K. ("the mother") appeals from a judgment of the Coffee Juvenile Court ("the juvenile court") terminating her parental rights to C.D. ("the child") on the petition of D.D. ("the father"). For the reasons set forth herein, we reverse the judgment.

## Background

In November 2023, the father petitioned the juvenile court to terminate the mother's parental rights to the child. On December 8, 2023, the father moved to consolidate his termination action against the mother with a pending dependency action that his mother, D.F. ("the paternal grandmother"), had initiated ("the dependency action") as well as with a custody and child support action he had initiated against the mother. The juvenile court denied that motion.

In February 2023, the juvenile court held a hearing in the dependency action, after which it determined that the child was dependent and awarded joint physical and joint legal custody to the father and the paternal grandmother. The record on appeal does not include a copy of that order.

The juvenile court held a trial on the father's petition to terminate the mother's parental rights in September 2024. The mother did not appear for the trial; only the father testified. The father testified that the mother and he were not married at the time of the child's birth in September 2016. According to the father, shortly after the child's birth, the mother was incarcerated. While the mother was incarcerated, he

2

said, the child resided with the child's maternal grandmother. He said that, when the mother was released from prison in 2017, the child returned to the mother.

The father testified that, in February 2019, he took physical custody of the child. He said that, at the time he picked up the child, the child had not been taken care of. He said that the child's hair was matted in several places and that the child had never had a haircut.

The father said that the mother had not seen the child since February 2019. He said that she had not paid any child support for the child and that she had not maintained a consistent relationship or any contact or communication with the child. He testified that he had spoken with the mother only once or twice since February 2019. When asked whether the mother had attempted to see the child, he responded that, at some point in 2023, when he had been arrested for driving under the influence, the mother had attempted to retrieve the child from the paternal grandmother but that the paternal grandmother had not allowed her to do so. He said that this event had caused the paternal grandmother to file the dependency petition.

The father testified that the mother had "consistently and obsessively" used drugs or alcohol. He said that he believed that the mother's parental rights to another child had been terminated because the mother had checked herself into a hospital and had been caught using heroin while she was there.

The father testified that he believed that it was in the child's best interest for the mother's parental rights to be terminated. When asked about whether there were any alternatives to terminating the mother's parental rights, he responded that he did not see how there were any other options. He testified that he had a job and a family-support system and could provide for the child's needs.

After the father completed his testimony, the child's guardian ad litem, when asked by the juvenile court, stated that it would be in the child's best interest to terminate the mother's parental rights because the mother had not "made a statement or bothered to show up for court." At the conclusion of the hearing, the juvenile court made findings on the record and concluded that the mother's parental rights were due to be terminated.

After the hearing, the juvenile court entered a judgment terminating the mother's parental rights. In its judgment, the juvenile court found that the child had been in the father's exclusive care since February 2019 and that the mother had had no contact with the child since that time. It found that, since the child has been in the father's care, the mother had not done anything to change her circumstances to meet the child's needs, that she had failed to maintain consistent contact with the child, and that she had failed to provide for the child's material needs or pay a reasonable portion of child support for the child. The juvenile court found that there were no significant emotional ties between the mother and the child. It found that the mother had a history of substance abuse and incarceration that rendered her unable to care for the child's needs and that the mother's parental rights to a sibling of the child had been terminated. The court found no benefit to the child in maintaining the mother's parental rights, and it found that there were no alternatives to the termination of her parental rights that were consistent with the child's best interests. The court noted that, as a result of its judgment in the dependency action, the child was then in the joint legal and joint physical custody of the father and the paternal

grandmother. It noted that "[t]he father expressed concerns that the mother would attempt to remove the child from the home and that she had made an effort to do so in the past while the father was briefly incarcerated, and the child was in the home of the paternal grandmother."

The mother appeals from the judgment terminating her parental rights.

Standard of Review

In reviewing a judgment terminating parental rights, this court considers whether the judgment is supported by evidence that the juvenile court reasonably could have found to be clear and convincing. See J.H. v. Bibb Cnty. Dep't of Hum. Res., 261 So. 3d 1229, 1232 (Ala. Civ. App. 2018). Clear and convincing evidence is "'[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.'" L.M. v. D.D.F., 840 So. 2d 171, 179 (Ala. Civ. App. 2002) (quoting § 6-11-20(b)(4), Ala. Code 1975). This evaluation "'requires a level of proof greater than

6

a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt. '" Id.

We presume that the juvenile court's factual findings are correct when, as here, those findings rest on evidence that the juvenile court received ore tenus because the juvenile court had the benefit of "observing witnesses … as they testified, and, therefore, [the juvenile court] was able to assess their demeanor and credibility." J.C. v. State Dep't of Hum. Res., 986 So. 2d 1172, 1195 (Ala. Civ. App. 2007). We do not presume the correctness of questions of law, however, which we review de novo. See J.W. v. C.B., 68 So. 3d 878, 879 (Ala. Civ. App. 2011).

## Analysis

The mother contends on appeal that the circumstances in this case were not so egregious as to warrant the termination of her parental rights. She also contends that the juvenile court misapplied the two-pronged test set forth in Ex parte Beasley, 564 So. 2d 950 (Ala. 1990), for terminating parental rights. She argues specifically that the juvenile court incorrectly determined that there were no viable alternatives to terminating her parental rights, and she specifically argues that the father presented no evidence that she was a danger to the child, that the

7

child was not presently being cared for, that the child's welfare was threatened by her maintaining her parental rights, or that the child's best interest would be served by terminating her parental rights.

"Inasmuch as the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances." Ex parte Beasley, 564 So. 2d at 952. When one parent seeks to terminate the parental rights of the other parent, the juvenile court is required to apply a two-part test. Id. at 954. First, it must consider whether there exist statutory grounds for termination of parental rights as set forth in the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala. Code 1975 ("the AJJA"). Id.; W.W. v. H.W., 384 So. 3d 663, 669-70 (Ala. Civ. App. 2023). Second, it must "inquire as to whether all viable alternatives to a termination of parental rights have been considered." Id. In addition, in all cases involving the termination of parental rights, the juvenile court must consider whether termination of parental rights serves the best interest of the child. See § 12-15-319(a), Ala. Code 1975; W.W., 384 So. 3d at 670.

Regarding grounds for termination of parental rights, § 12-15-319(a) provides:

8

> "If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents."

The statute then provides a non-exhaustive list of factors that a court should consider in determining whether to terminate parental rights, among which is abandonment of the child. § 12-15-319(a)(1). The AJJA defines "abandonment" as

> "[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."

§ 12-15-301(1), Ala. Code 1975. The mother does not challenge directly the juvenile court's findings that, among other things, she abandoned the child. Our review of the record discloses evidence that the juvenile court could have found to be clear and convincing that the mother did, in fact, abandon the child. The record similarly discloses evidence that could have clearly convinced the juvenile court that other grounds, such as the mother's failure to support the child, supported terminating the mother's

9

parental rights. As a result, we cannot conclude that the juvenile court erred in finding that the first prong of the test for terminating the mother's parental rights was met.

Because the juvenile court concluded, and the evidence supports, that the mother had abandoned the child, the juvenile court was not required to consider whether there were viable alternatives to the termination of the mother's parental rights. See W.W., 384 So. 3d at 670. This is because the mother, when she abandoned the child, " 'lost any due-process rights that would have required the juvenile court to explore other alternatives before terminating [her] parental rights.' " L.L. v. J.W., 195 So. 3d 269, 274 (Ala. Civ. App. 2015) (quoting C.C. v. L.J., 176 So. 3d 208, 216 (Ala. Civ. App. 2015)).

Despite the fact that the two-part test was met in this case, the juvenile court, as noted above, was still required to consider whether terminating the mother's parental rights served the best interest of the child. See § 12-15-319(a), Ala. Code 1975; W.W., 384 So. 3d at 670. Our review of the record fails to disclose that the father articulated any purpose that would be served by terminating the mother's parental rights. For example, the father did not testify that he had married since

10

the child's birth and that, by terminating the mother's parental rights, any new spouse he may have would be able to adopt the child. Further, he did not testify or provide any other evidence indicating that continuing the mother's parental rights would cause the child confusion, endanger the child's welfare, or in any other way jeopardize the wellbeing of the child. This is particularly true given that he and the paternal grandmother share legal and physical custody of the child, and it does not appear that any order permits the mother to exercise visitation with the child. In short, the record discloses no benefit to the child by terminating the mother's parental rights. On the other hand, it is undisputed that terminating the mother's parental rights will end the child's right to inherit from her. See Matter of Beasley, 564 So. 2d 959, 960 (Ala. Civ. App. 1990).

In this respect, this case is similar to W.W. v. H.W., 384 So. 3d 663 (Ala. Civ. App. 2023). In W.W., the juvenile court terminated the parental rights of a father on the mother's petition. W.W., 384 So. 3d at 664. The juvenile court held, and the evidence demonstrated, that the father had abandoned the child. Id. at 664, 670. On appeal, this court concluded that

11

there was no evidence that terminating the father's parental rights would advance the child's interests:

> "In this case, the mother testified that the child had been seeing a counselor for three months before the termination-of-parental-rights hearing; the mother claimed that the reason counseling was necessary, at least in part, was because the child had separation anxiety. The mother presented no evidence regarding whether the father's abandonment of the child had caused the child mental distress or whether the counseling was meant to address issues pertaining to a possible desire of the child to maintain a relationship with the father. Neither party presented evidence concerning the nature of the relationship between the father and the child or how the father's intermittent contact with, and abandonment of, the child had impacted the child.

> "Further, the termination of the father's parental rights would leave the child in this case without a legal father. Although the mother testified that she was engaged to be married, there is no evidence in the record indicating that that man might adopt the child in the future."

Id. at 671. As a result, we reversed the judgment terminating the father's parental rights. Id. See also Matter of Beasley, 564 So. 2d 959, 960 (Ala. Civ. App. 1990) (holding that termination of father's parental rights was "an unnecessarily drastic action not supported by clear and convincing evidence" when evidence did not show benefit to child of terminating the father's parental rights).

12

As in <u>W.W.</u>, we cannot in this case glean from the record any evidence supporting the juvenile court's finding that terminating the mother's parental rights would serve the child's best interests. As a result, the juvenile court's judgment in this regard is not supported by the evidence, and the judgment is due to be reversed.

<u>Conclusion</u>

For the foregoing reasons, the juvenile court's judgment terminating the mother's parental rights regarding the child is reversed, and the cause is remanded.

REVERSED AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Lewis, JJ., concur.